Owings's Ex'rs. *vs.* Owings.—June, 1827.

A promise by a debtor to his creditor to pay his debt to a third person, will not enable such person to maintain an action at law, in his own name, for its recovery.

Where one person pays money to another for the use of a third, or where a person, having ready money belonging to another, agrees with that other to pay it over to a third, in both these cases an action may be brought in the names of the persons beneficially interested.

A promise to one to pay a sum of money to several other persons in equal portions, where it was not the intention of the contracting parties that such other persons should receive or recover by law, the entire sum, and then divide it among themselves, if the foundation of an action at all, will confer a right to maintain a separate action for each part.

Neither a devise of land, nor a legacy of a less amount than the sum due, is considered in law a satisfaction of a pecuniary debt.

It is not consistent with the policy of the law to encourage agreements, by which the right to administer on the estates of deceased persons, is declined in favour of one, who contracts to pay the declining party, for permission to administer, all the commissions allowed for the settlement of such estates, as in bad hands the practice might lead to gross violations of trusts, and the most pernicious consequences.

Error to *Anne-Arundel* County Court. *Assumpsit* for money lent; for money had and received, and on an *insimul computassent*. *Non assumpsit* pleaded, and issue joined.

At the trial the plaintiff, (now defendant in error,) offered evidence, that *Richard Owings*, the testator of the defendants, (now plaintiffs in error,) in his lifetime, proposed to the widow of *Beale Owings*, of *Baltimore* county, the mother of the plaintiff, that if she would decline taking out letters of administration on her deceased husband's estate, and permit him to obtain such letters, that upon the settlement of the estate he would pay to her all the commissions which should be allowed him by the orphans court for the settlement of said estate; that after the settlement of the said estate, and after the said *Richard Owings* had received and been allowed as aforesaid the sum of $1,069 63, as his said commission, it was agreed by and between the said *Richard* and the said mother of the plaintiff, that the said commission should not be paid to the said widow, but should be paid, with interest thereon, to the children of the said widow, viz. *Harriet Owings, Mary Owings,* and *Nathan Owings*, in equal portions; and the said *Richard Owings* promised and agreed with said widow to pay the same accordingly. That afterwards, upon the marriage of said *Harriet*, the said *Richard* paid to her the sum of $500, which he told her was the portion to which she was entitled. The defendants then offered in evidence the will of *Richard Owings*, dated the 17th of October 1818, containing, among others, the following devises, viz. "*Item.* I give and bequeath unto my two grandchildren, *Nathan H. Owings* and *Mary Owings*, children of my son *Beale*, all my tract of land lying in *Baltimore* county, on *Morgan's* Run, called *Point Espright*, and known by the name of *Lindsey's Meadows*, in equal portions to each of them, their heirs and assigns, forever, as tenants in common; also one hundred dollars to each of them, to be paid out of my personal estate." The defendants further proved by the person who wrote the will, that the devises and bequests made by the testator to *Nathan* and *Mary Owings*, were declared by him, at the time of making his will, to be made for the purpose of placing said *Mary* and *Nathan* on the same footing with *Har-*

riet Iiams, to whom he had already paid the sum of money proved as above mentioned to have been paid. The defendants then prayed the court to instruct the jury, that the plaintiff was not entitled to recover. And the Court, [Dorsey, Ch. J. and Kilgour, A. J.] instructed the jury, that if they believe the testimony offered on the part of the plaintiff, that the agreement on the part of the widow to relinquish her right to the administration on her deceased husband's estate, and the promise of . Richard Owings, in consideration thereof, to pay the commissions to her, with his allowance and receipt of the sum of money, is a sufficient consideration to support an action of assumpsit therefor against the said Richard Owings by the said widow. That the subsequent agreement between the said Richard Owings, and the said widow, transferred to the said children such an interest in the money received as such commissions by Richard Owings, as to enable them to recover the amount thereof in an action of general indebitatus assumpsit. That the devise and bequest made by Richard Owings to the plaintiff, is not in contemplation of law a satisfaction of the plaintiff's claim, or any part thereof. The defendants excepted. Verdict and judgment for the plaintiff, and the defendants brought the present writ of error.

The cause was argued at the last June term, before BUCHANAN, Ch. J. and EARLE, STEPHEN, and ARCHER, J.

Magruder, for the plaintiffs in error, contended, 1. That the promise by their testator, stated in the bill of exceptions, was nudum pactum.

2. If for the promise there was such a consideration as would support an action at law, the action ought to have been brought in the name of the mother of the defendant in error, to whom the promise was made, and from whom the consideration moved.

3. If the suit could be brought by the children, they ought to have united in one suit, instead of bringing separate suits on one promise.

4. The devise to the plaintiff below, in the will of the testator, of the defendants, is a satisfaction of the claim set up in this action.

He cited, in his argument upon the above points, Selw. N.

*P.* 39, 40, 41, 45. *Crow vs Rogers*, 1 *Stra.* 592. 1 *Com. on Cont.* 26. *Toller*, 337. *Chaplin vs Chaplin*, 3 *P. Wms.* 247. 1 *Com. Dig.* 309, *(note.)*

*Shaw*, for the defendant in error, cited *Pow. on Cont.* 211, 206, 207. *Forth vs Stanton*, 1 *Saund.* 211, b. *Pillans vs Mierop*, 3 *Burr*, 1673. 1 *Com. Dig.* 310. *Partridge vs Partridge*, 2 *Harr. & Johns.* 63.

*Curia adv. vult.*

STEPHEN, J. at the present term, delivered the opinion of the Court. [After stating the case he proceeded as follows:] The question for this court to determine, is whether the court below gave a correct exposition of the law to the jury upon the prayer made to them? In deciding upon this case several questions present themselves for the consideration and adjudication of this court. *First.* Was there a sufficient consideration to sustain the promise made by *Richard Owings* to the mother of the plaintiff? *Secondly.* If there was, ought the suit to have been brought by the mother of the plaintiff, the promisee; or was the plaintiff, the person beneficially interested in that promise, competent to maintain the action in her own name? *Thirdly.* If she was competent to support the action in her own name, ought she not to have joined with her in the action her co-beneficiaries under said contract; or, in other words, was each of the children, who were intended to be benefited by said agreement, competent to support an action for their proportional interest? And *lastly.* Whether there is any thing in the said agreement between the mother and the grandfather, which it is contrary to the policy of the law to sanction or allow? As to the sufficiency of the consideration to support the promise, in 1 *Powell on Contracts*, 344, the law is laid down to be, in reference to this subject, that "a consideration may arise or be created by doing or permitting somewhat to be done to the prejudice or loss of one of the parties. So that it is not absolutely necessary that the consideration for a contract imports some gain to him that makes the contract; but it is sufficient that the party, in whose favour the contract is made, foregoes some advantage or benefit which otherwise he might have taken or had, or suffers some loss in consequence of placing

his confidence in another's undertaking." In illustration of this principle, in page 347, he refers to *Webb's* case, 4 *Leon.* 110, "where in an action upon the case the plaintiff declared, that whereas C. was indebted to J S, and J S to the defendant; the defendant, in consideration that the plaintiff would procure J S to make a letter of attorney to the defendant to sue C, promised to pay and give to the plaintiff £10. It was objected that here was not *any* consideration to induce the *assumpsit;* for that the defendant, by this letter of attorney, got nothing but his labour and travel; but the exception was not allowed of; because in this case, not so much the profit which redounded to the defendant, as the labour of the plaintiff in procuring of the letter of attorney, was to be respected." So in the case now before this court, it is not so much the emolument which the defendants' testator derived from his undertaking or agreement with the mother of the plaintiff, that is to be regarded as the valuable and beneficial privilege which the promisee parted with in transferring to the defendants' testator her right of administration. In *Pillans vs Mierop,* 3 *Burr.* 1673, Mr. Justice *Yates* says, "any *damage* to another, or *suspension* or *forbearance* of his *right,* is a foundation for an undertaking, and will make it binding, though *no actual benefit* accrues to the party undertaking."

As to the right of the plaintiff to maintain the action in her own name, in the case of *Schemerhorn vs Vanderheyden,* 1 *Johns. Rep.* 139, the court say, "we are of opinion that where one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise. This was the doctrine of the King's Bench in the case of *Dutton vs Pool.* affirmed in error. The same principle has since that time been repeatedly sanctioned by the decisions of the *English* courts"—*Vide 3 Boss. & Pull.* 149, in the notes to *Pigot vs Thompson.* In that case *Buller,* Justice, is stated to have said, "if one person makes a promise to another for the benefit of a third, that third may maintain an action upon it." In the case of *Martyn vs Hind,* 2 *Cowper's Rep.* 443, Lord *Mansfield,* in speaking of the case *Dutton vs Pool,* reported 1 *Vent.* 318, and in 2 *Lev* 210, is reported to have said, "it is matter of surprise, how a doubt could have

arisen in that case. It was a promise to the father by a person in remainder, that if he would leave so much wood standing, he would pay his daughter £1000, the value of the wood, which the father had intended to cut down. The daughter, upon the father's death, brought an action for the £1000, and the court held she was entitled to bring the action. And upon error the judgment was affirmed." In the note to *Pigot vs Thompson,* 3 *Bos. & Puller,* 149, it is said, "with respect to the right of a third person to sue upon a parol promise made to another for his benefit, there is great contradiction among the older cases. But in *Dutton vs Pool,* the point seems to have been very fully considered, and very solemnly decided. There the father of the plaintiff's wife being seized of a wood, which he intended to sell to raise fortunes for his younger children, the defendant being his heir, in consideration that he would forbear to sell it, promised to pay his daughter, the plaintiff's wife, £1000, for which the action was brought; and it was held, that the plaintiff might well maintain the action. Which decision was affirmed in the Exchequer Chamber. In that case, indeed, some stress was laid upon the nearness of relationship between the plaintiff's wife and her father, to whom the promise was made; but another case has since occurred to which that reason does not apply;" and the case of *Martyn vs Hind,* above mentioned, is referred to.

But in this case the promise was made to the mother for the benefit of her children, and therefore the decision of the court in *Dutton vs Poole* is in perfect accordance with the judgment of the court below rendered in this case, as to the capacity of the plaintiff to sue in her own name, if the cases are analogous or can be assimilated in point of principle. In the case of *Dutton vs Poole,* there was nothing due from the son to the father, which the son promised the father he would pay to the daughter; in that case, as in this, there was no pre-existing debt due to the father from the son, upon which the promise could operate by way of transferring it as a *chose in action;* but it was simply an engagement, that if the father would forbear selling the wood in which the son had an interest as heir at law, he would pay the daughter the £1000, which it was the intention of the father to raise by selling the wood. In that case, then,

the original promise or undertaking was for the benefit of the daughter; the father at the time the promise was made had no claim whatever against the son upon which the promise for the benefit of the daughter was intended to operate, and consequently it could not be viewed in the light of an assignment of a *chose in action.* But in the case now under adjudication, the money had actually been received by the grandfather at the time the promise was made by him to the mother of the plaintiff; she had nothing more than a *chose in action,* which could only be reduced into possession by a suit at law. In the late edition of *Com. Digest,* 309, *(note* P,) will be found a most elaborate examination of most, if not all the authorities which have a bearing upon this subject. In that note, the author says, "There is nothing, however, illegal in transferring a contract unbroken, or even a debt due, the transfer is available in equity, and the assignor cannot afterwards sue upon the contract for money had and *received,* that being an equitable action, and he having no equity; nor can he afterwards release it, if the debtor knows of the assignment. If, too, where the assignee is about to sue upon it in his own name in equity, or in name of the assignor at law, the debtor promises to pay him if he will forbear; *(e. g.)* on the time of forbearance elapsing he may sue him in his own name. Here the suit, though in form on a new contract, is in effect founded on the old one as well, for the assignee thereby recovers what is due for the breach of it, which recovery bars the assignor's action; and in this indirect manner may a stranger to a contract sue thereon. A contract may be assigned by word of mouth, for this reason, if no other, that the transfer passes but an equity. It forms no exception to the rule, (that at common law simple contracts cannot be transferred by the owner,) that if A, having ready money belonging to B, agrees with B to pay it over to C, C may sue A for it in his own name, since the reason is, that by the agreement the money has changed owners, and A has become C's agent, as he was B's before. This case, and that where B pays money to A for the use of C, when C may sue for it, are in principle the same. However, to enable C to sue as above, it seems requisite that a specific sum of money, or what is equivalent thereto, has been deposited with A, upon which the as-

signment may operate; and that A's assent to pay C a debt due from himself to B, would be unavailing." This valuable note in *Comyn* has been more copiously extracted from on account of the clearness and perspicuity, with which the law upon this subject is therein laid down and explained. If in the case now before this court, the promise by *Richard Owings*, the grand-father, had been in the first instance to the mother, for the benefit of the children; or in other words, if he had promised the mother to pay the commissions to the children, in that case the promise would have enured for the benefit of the children, and upon the authority of *Dutton vs Poole*, the children might have supported an action in their own names; but it was not until after the money was received by him, and had become a debt due to the mother, that it was agreed between him and the mother, that it should be paid over to the children; and was consequently nothing more than a promise made by A, indebted to B, to pay C that debt; and no case has been found where it has been decided, that under such circumstances C could maintain the action in his own name; such a case being essentially different from the one where one person pays money to another, for the use of a third, or where a person, having ready money belonging to another, agrees with that other to pay it over to a third; in both which cases it is admitted the action might be brought in the names of the persons beneficially interested. As to the position that the devise and bequest operated as a satisfaction of the debt, it is considered not to be sustainable, because it is well settled, that a devise of land is not considered in law a satisfaction of a pecuniary debt, nor can the legacy in this case operate that effect, because it is of a less amount than the sum due; and even if the parol declarations of the testator, made cotemporaneously with the will, were admissible, which it is unnecessary to decide, there is no proof that possession had ever been taken of the land, or that the legacy had ever been paid. This court is further of opinion, that upon the evidence in this cause separate suits would have been sustainable by each of the children for their respective proportions, if the actions could have been brought in their names; it is not the case of a promise made to them jointly, but a promise made to their mother for their benefit by the defendant's testa-

· tor, whereby he engaged to pay the money due to the mother, to her three children, *Harriet*, *Mary*, and *Nathan Owings*, *in equal portions*, so that it was not the intention of the contracting parties, that the children should receive or recover by law the entire sum, and then divide it among themselves, but that each should be paid his or her separate part by the grandfather; from whence it follows, that if a resort to legal process become necessary to enforce payment, each would have had a right to maintain a separate action for his or her part; provided the case had been such that suits could have been brought in their own names. It is not deemed necessary to go into an inquiry how far such agreements as the present ought to receive the countenance or sanction of the law, as the court do not discover in this case that the rights of any of the parties interested have been injuriously affected by the transfer of the right of administration; but it is certainly not consistent with the policy of the law to encourage such transfers as in bad hands, the practice might lead to gross violations of trusts, and the most pernicious consequences. From this view of the law governing this case, the court are of opinion that the judgment below ought to be reversed.

ARCHER, J. dissented.

JUDGMENT REVERSED.