## PATTEN *v.* GLOVER.

EVIDENCE; PRIVILEGED COMMUNICATIONS; ADMINISTRATION; CON-
TRACTS; SETTLEMENTS; STATUTE OF LIMITATIONS; CLAIMS
AGAINST DECEDENTS' ESTATES; BEQUEST TO
CREDITOR, EFFECT OF.

1. Communications to an attorney, made to him as a friend and not in his professional capacity, and not intended to be confidential, are not privileged, so as to disqualify him as a witness concerning them.

2. R. S. U. S., Sec. 858, providing that "in actions by or against executors, administrators and guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward," applies to declarations made by a testatrix concerning the existence of an indebtedness alleged to have been due from her, where in a suit against her estate such declarations are sought to be introduced in evidence by the creditor to establish the alleged indebtedness; but the statute does not apply to declarations by a testatrix where her estate is not interested in the subject matter of the suit in which the declarations are sought to be used in evidence.

3. Where a mother, who was the administratrix of her husband's estate and guardian of his five daughters, died without having formally administered upon his estate, or kept an account with the children, or preserved any vouchers of her expenditures on their account, but prior to her death an instrument had been prepared and executed by all the parties interested, by which each daughter agreed to accept a stated sum in full for her share of her father's estate, which arrangement had been recognized to the extent of the payment in full to one of the daughters, before her marriage, of the

amount she had agreed to accept, and partial payments to all of the other daughters on account, it was *held*, in a suit between the daughters, all of whom were executrices of their mother's estate, after their mother's death, that the instrument in question, made in her lifetime, had the effect of a statement of account between the mother and daughters, and was binding on all the parties to it, and that such partial payment removed the bar of the statute of limitations, which was attempted to be interposed by one of the daughters, who was sued as executrix, against her sisters' claims.

4. The act of Maryland of 1798, relating to estates of decedents and which bars the claim of a creditor of an estate unless suit is brought within nine months after the claim shall have been exhibited against the executor or administrator, has no application to a case in which four executrices of an estate in a suit against a co-executrix, seek to establish their claims as creditors against the estate of their decedent. The claim of an executrix, who is also a creditor, is not such a claim as can be *exhibited* against a co-executrix.

5. Courts of equity lean strongly against the presumption that a legacy to a creditor is a satisfaction of his debt, and will never enlarge the operation of the rule which gives a legacy to a creditor such an effect ; and where a mother who dies indebted to her children, as administratrix of their father's estate and their guardian, bequeaths to them a portion of her own estate, which is more than the amount of the indebtedness, such bequest will not be held to be a satisfaction of the indebtedness due by her to them, as they are the natural objects of the testatrix's bounty and would have inherited the whole estate if no will had been made.

6. Where a father or mother, or other person *in loco parentis*, who is a debtor of his or her child, makes an advancement to the child upon marriage, or upon any other occasion, the advancement will be presumed to be a satisfaction, or satisfaction *pro tanto*, of the debt.

No. 94. Submitted September 29, 1893.—Decided November 8, 1893.

HEARING in the first instance of an equity cause brought to establish claims against the estate of a decedent, and transferred from the General Term of the Supreme Court of the District of Columbia to this court by operation of law. *Judgment for complainants.*

THE COURT in its opinion stated the case as follows :

The bill of complaint in this case was filed January 8, 1890, in the Supreme Court of the District of Columbia by Mary E., Josephine A., Edith A., and Helen Patten against Augusta P. Glover, in her own right and as an executrix of the estate of Anastasia Patten, deceased. John M. Glover, husband of defendant, has made himself a party to the suit as a defendant also.

After some preliminary orders, striking out demurrers for non-compliance with the rules, &c., and sustaining one in part, which caused an amended bill to be filed, the cause stood for hearing in the special term, from whence it was certified to the General Term to be there heard in the first instance. No action having been taken in the General Term, the cause has been transferred under the law to this court.

The complainants and defendant, Augusta P. Glover, are the daughters and only heirs-at-law of Anastasia Patten, late of the District of Columbia, deceased, and of Edmund Patten, late of the State of Nevada, deceased. Anastasia Patten died September 11, 1888, leaving a will, dated December 23, 1879, by which she devised and bequeathed the whole of her estate, subject to $45,000 in legacies, to her said daughters, and named such of them as might have attained majority at her death as executrices. The five daughters qualified as executrices of the will in the Supreme Court of the District.

The will not having been signed in the presence of the number of witnesses required by the laws of the District, was invalid to pass real estate situated therein, of which the bulk of the estate consisted, and the same therefore descended to the five daughters as if she had died intestate.

It appears that upon the death of her husband, Mrs. Patten became administratrix of his estate and guardian of the children aforesaid, in the State of Nevada, where he died, and where all the parties then lived.

By the laws of Nevada, on the death of her husband intestate, Mrs. Patten became entitled to one-half of the estate and the children inherited the other. Mrs. Patten gave proper bonds and administered and held the whole estate until her death, but never filed any account of her administration, and, in fact, kept no regular accounts with her children, and preserved no regular vouchers.

In September, 1885, in order to relieve her sureties probably, Mrs. Patten undertook to adjust her accounts with her children, and in doing so called in the assistance of Curtis

J. Hillyer.   The result was the preparation and execution of the following paper by all of the children except Helen, who was not then twenty-one years of age:

" Whereas, our mother, Anastasia Patten, as guardian for us, received in the years 1873, '4, '5 certain amounts of money, being our portion by inheritance of the estate of our deceased father; and,

" Whereas, no special separate investments of the money so received have been made by our said guardian, but the same has been by her kept and safely invested in connection with moneys belonging to her in her own right derived from the said estate; and

" Whereas, our said guardian has up to the present date had entire charge of our maintenance and education, and has during the past thirteen years incurred a large amount of family expenses for our benefit, of which expenses no account has been kept by her; and,

" Whereas, we and our said guardian are now desirous of settling the account between us in a just and equitable manner without attempting to secure technical accuracy in such settlement; and,

" Whereas, our said mother and guardian has submitted to us for inspection all accounts and papers in her possession touching or relating to the receipts and disbursements entering into such accounting and we have personally general knowledge concerning the family expenses during said period; and,

" Whereas, from such examination and knowledge we believe that by a payment to each of us by our said guardian of the sum of $101,600 an equitable settlement will be made and full justice done to each of us:

" Now, therefore, each of us for herself agrees to accept the said sum of $101,600 in full and complete settlement of all accounts, claims, and demands between us and each of us and our said mother and guardian and in full satisfaction of all claims and demands of whatever character arising out of or connected with the administration of said estate or the

said relation of guardian and ward, and each of us for herself authorizes and requests that upon presentation of this agreement and a receipt for the above amount, the court having jurisdiction thereof, will without further investigation of accounts, so far as they concern either of us, pass the final accounts of our mother as administratrix and guardian, and by proper decree discharge those liable as bondsmen for her action in either capacity."

The complainant, Helen Patten, by allegation of the bill, accepts and adopts the said settlement as fully as if she had signed it, and claims equally with her sisters thereunder.

Mrs. Patten did not present this paper to the court in Nevada, but kept it among her papers until her death. Nor did she make any payment of the claims therein stated unless to the partial extent hereinafter mentioned.

Under the laws in force in this District, an executor cannot retain money in his hands to pay a debt due him by the estate, but must present the same and have it first passed in the Orphans' Court. Act of 1798, Ch. 101, Subch. 8, Sec. 18. In obedience to this law, the complainants presented their claims May 10, 1889, to the special term, sitting as an Orphans' Court, and prayed their allowance. Augusta P. Glover appeared in opposition to this petition, and set up substantially the same matters therein as in her answer to this bill. And thereupon the learned justice holding said term passed the following order in said cause: ·

"The petition of Mary E. Patten, Josephine A. Patten, Edith Patten, and Helen Patten, with the answer thereto of Augusta P. Glover, in pursuance of the rule to show cause, now came on to be heard and was argued by counsel and considered by the court, and it appearing to the court that the said petition presents a subject matter within the jurisdiction of the court, but that the claims of the petitioners cannot be determined by this court without the determination of matters whereof this court has no jurisdiction, such as the effect upon the said claims of the will of the testatrix, the payment to respondent on account, as alleged and de-

nied, and other matters, it may be, it is therefore ordered, adjudged and decreed this 13th day of June, 1889, that further action upon the said petition be, and the same is hereby, suspended until said other matters whereof this court has not jurisdiction shall be first tried and determined in the appropriate tribunal in such manner as counsel may advise."

After the passage of this order the present bill was filed to procure an adjudication of the matters not within the jurisdiction of the Orphans' Court.

It appears that in February, 1887, just before Mrs. Glover's marriage, her mother delivered to her United States bonds of the value of $102,800, which the complainants allege was on account of the indebtedness named in the instrument aforesaid. It appears also that Mrs. Patten made certain investments of money in loans payable to the complainants, amounting to the sum of $11,250 each, which they allege are to be credited on account of the said indebtedness. The personal estate of Mrs. Patten is probably not sufficient to satisfy this indebtedness and the legacies given in her will, though the value of the real estate is very much greater.

The defendants contend: (1) That the instrument of September, 1885, was not the statement of an account between Mrs. Patten and her children; that she never promised or became bound to pay the amounts therein stated, and that their only claim, if any, against her is such as may be shown to be due, upon a settlement of the estate of their father, as administered by her, which, they say, is barred by limitation. (2) That the claim is barred also by the provision of the statute relating to estates of deceased persons because not sued upon in nine months after refusal. (3) The third and chief contention is, that the debts being less than the amount of the estate bequeathed to the daughters, to whom they are due, must be deemed to be satisfied thereby.

*Mr. Henry E. Davis* for the complainants:

1. The communications to Judge Hillyer were not privileged, and his testimony was admissible. Where one who,

although an attorney-at-law, acted as a friend, there is no privilege. *Beeson* v. *Beeson*, 9 Pa. St., 279; *Romberg* v. *Hughes*, 18 Neb., 579; *Rex* v. *Brewer*, 6 C. & P., 363; *Branden* v. *Gowing*, 7 Rich., 459; *Thompson* v. *Kilbourne*, 28 Vt., 750; *Goltia* v. *Wolcott*, 14 Ill., 89; *Hoffman* v. *Smith*, 1 Caines, 157; 19 Am. & Eng. Encyc. of Law, p. 136, note. Even where the acknowledged relation of attorney and client existed, to make it privileged the attorney must have derived his knowledge from that relation. *Chillicothe, &c., Co.* v. *Jameson*, 48 Ill., 281; *Crawford* v. *McKissack*, 1 Port. (Ala.), 433; *Morgan* v. *Shaw*, 4 Madd., 37; *Wilson* v. *Rastall*, 4 Tenn., 753; *Hatton* v. *Robinson*, 14 Pick., 416; *Foster* v. *Hall*, 12 Pick., 89; *Gower* v. *Emery*, 18 Me., 82. The communication, to be privileged, must have been made to the attorney in his character of legal adviser, and in regard to the business about which the legal advice was sought. *Earle* v. *Grant*, 46 Vt., 113; *McManus* v. *State*, 2 Head, 213; *Oliver* v. *Cameron*, McA. & M., 237; *Flack* v. *Neill*, 26 Tex., 273; *Branden* v. *Gowing, ubi supra*; *Wilson* v. *Rastall, ubi supra*; *Coon* v. *Swan*, 30 Vt., 6; *Brown* v. *Matthews*, 79 Ga., 1. The communication, to be privileged, must have been received in the relation of attorney and client, and in the course of professional business, and must have been confidential. *Sharon* v. *Sharon*, 79 Cal., 636, 678; *Rochester Bank* v. *Suydam*, 5 How. Pr., 255; 1 Greenl. Ev., sec. 239, p. 322, note (*b*); *House* v. *House*, 61 Mich., 69; *Flack* v. *Neill, ubi supra*; *Hatton* v. *Robinson, ubi supra*; *Cady* v. *Walker*, 62 Mich., 157; *Mobile, &c., Co.* v. *Yeates*, 67 Ala., 164; *Fulton* v. *Maccracken*, 18 Md., 528; *Hager* v. *Shindler*, 29 Cal., 63; *Henderson* v. *Terry*, 62 Tex., 284; *Hibbard* v. *Haughian*, 70 N. Y., 54. That which is proposed to be communicated to another party, as a foundation for bargaining, is not privileged. *Burnside* v. *Terry*, 51 Ga., 186; see *Chapman v. Peebles*, 84 Ala., 283; 1 Greenl. Ev., p. 328, note and cases; *Rice* v. *Rice*, 14 B. Mon., 335. Where the question is as to the meaning of an act in which the attorney participated, there is no privilege. *Chapman* v. *Peebles*, 84 Ala., 283. Where the as-

sumed client is dead and the testimony would tend to make known and subserve his purpose it is admissible. *In re Layman*, 40 Minn., 372; *Blackburn* v. *Crawford*, 3 Wall., 175; *Russell* v. *Jackson*, 15 Jur., 1117; Wharton Ev., sec. 591; see *Greenough* v. *Gaskell*, 2 Myl. & K., 98. And the privilege belongs to the client alone and his representatives as against third parties, and not *inter sese*. *Gresley* v. *Mousley*, 2 Jur. N. S., 156.

2. The objection to the testimony of the complainants is equally without support. This objection is based upon the exception in Sec. 858, R. S. U. S. The object of the exception in this and similar enactments in the several States has been frequently declared: it is "to avoid the injustice that might follow the admission of testimony in behalf of one whose adversary in the proceeding can neither contradict, correct, or explain it, if false or erroneous, nor himself testify to countervailing facts." Woerner, Amer. Law of Admin., 829, 830, and cases cited. See also Whar. Ev., sec. 466; *Brown* v. *Brightman*, 11 Allen, 226; *McKenna* v. *Bolger*, 37 Hun., 528. And the courts will always look at the real parties and the real controversy to see whether they are within the purview of the statutes. *Smith* v. *Burnet*, 35 N. J. Eq., 314; Mowyer's Appeal, 48 Mich., 450. In this case, the controversy is really between the complainants on the one side, and Mrs. Glover on the other. It has relation exclusively to conflicting claims between them on their mother's estate. Where the opposite party to the suit was present and can testify as well as the survivor to what occurred, the survivor will not be excluded. *Jackson* v. *Payne*, 114 Pa. St., 80. So when the occurrence was in the presence of a third person who testifies. *Ebert* v. *Roth*, 150 Pa. St., 261. And to exclude the testimony, the transaction sought to be testified to must be that upon which the action is based. *Horner* v. *Frazier*, 65 Md., 10; *Barlow* v. *Buckingham*, 68 Ia., 169. See also, *Lewis* v. *Merritt*, 98 N. Y., 206; *Ring* v. *Jameson*, 2 Mo. App., 593; *Granger* v. *Bassett*, 98 Mass., 468; *Fairman* v. *Bacon*, 8 Conn., 418; *Potter* v.

*Nat'l Bank*, 102 U. S., 164. And the transaction must have been between the witness and the decedent. Testimony as to transactions between the decedent and another is not excluded. *Johnson* v. *Johnson*, 52 Iowa, 586 ; *Lines* v. *Lines*, 54 Iowa, 600 ; *Simmons* v. *Simmons*, 26 N. Y., 264 ; *Lobdell* v. *Lobdell*, 36 N. Y., p. 333 ; *Hildebrant* v. *Crawford*, 6 Lans., 502. The fact of the payment to Mrs. Glover, which is alleged and denied, and so is strictly an issue, can, therefore, beyond doubt be testified to by the complainants. The exclusion does not apply where the party would be competent without the enabling statute. *Angell* v. *Hester*, 64 Mo., 142; *Bates* v. *Forcht*, 89 Mo., 128 ; *Page* v. *Whidden*, 59 N. H., 507 ; *Pratt* v. *Patterson*, 81 Pa. St., 100. The statute is an enabling one, and the exception does not make incompetent any witness previously competent. Woerner, Amer. Law of Adm'n, 830, and cases ; Wharton Ev., sec. 476, and cases ; *Horner* v. *Frazier*, 65 Md., 1, 10.

3. The claims of the complainants were not satisfied by the legacies given them by the will. The rule respecting satisfaction of debts by legacies has been much considered, both in England and in this country. It is lucidly stated and considered by Woerner, American Law of Administration, pages 974, '5 (vol. II). It is called in *Hassell* v. *Hawkins*, 4 Drew., 468, 470, a " false principle," and when considered in the light of its application in the adjudged cases is clearly seen to have no place in this case. It is not much favored, and is made to yield to slight circumstances. *Edelen's Exec'rs* v. *Dent's Adm'rs*, 2 G. & J., 185 ; *Hall* v. *Hall*, 1 Bl. Ch., 130, 134-5 ; *Spencer* v. *Spencer*, 4 Md. Ch., p. 464 ; *Gilliam* v. *Brown*, 43 Miss., 641 ; *Eaton* v. *Benton*, 2 Hill, 576 ; *Horner's Exec'rs* v. *McGaughy*, 62 Pa. St., 189. A legacy is not a satisfaction unless very plainly shown either by the will itself or such a state of facts as leaves no doubt. *Waters* v. *Howard*, 8 Gill (Brantley's ed.), 262, notes and cases ; see *Reynolds* v. *Robinson*, 82 N. Y., 103. The legacy must equal or exceed the debt. *Owings* v. *Owings*, 1 H. & G., 485 ; *Reynolds* v. *Robinson*, 82 N. Y., pp. 107-8. And the

debt must have been liquidated in whole. *Reynolds* v. *Robinson, ubi supra ; Gilliam* v. *Brown*, 43 Miss., 641, 654, and cases cited ; *Van Riper* v. *Van Riper*, 2 N. J. Eq., 1. And contracted before execution of the will. *Crouch* v. *Davis*, 23 Gratt., 62, 93 ; *Heisler* v. *Sharp*, 44 N. J. Eq., 167. And the rule does not apply where the legatee is one of several to whom equal amounts are bequeathed. *Crouch* v. *Davis, ubi supra.* A devise of land will not satisfy a pecuniary debt. *Owings* v. *Owings, ubi supra ; Partridge's Adm'x* v. *Same*, 2 H. & J., 63 ; see *Eaton* v. *Benton*, 2 Hill, 576, 581. Nor will a gift of residue, because, the amount being uncertain, it *may be* less than the debt. *Lady Thynne* v. *Earl of Glengall*, 2 H. L., 131, 154, and cases cited.

4. The nine months limitation set up by the defendants has no application. The act of Maryland of 1798, ch. 101, subch. 8, sec. 18, refers only to claims which may be exhibited *against the executor* or administrator and on which suit may be brought against him. A claim of an executor cannot be exhibited against himself or his co-executor. The common law allowed retainer in such cases, but the statute provides, not for exhibition to any one, but for passage by the Orphans' Court. (Subch. 8, sec. 19.) The very order of sections 18 and 19 is most significant, the former dealing with claims *against* the executor, the latter with claims *of* the executor, which are clearly distinguished.

The provision in question by its terms applies only to those claims which may be put in suit against the executor. An executor cannot sue himself, nor can one executor sue another, even in equity, for a debt due by or to the testator. *Beall* v. *Hilliary*, 1 Md., p. 196 ; *Whiting* v. *Whiting*, 64 Md., pp. 160-1 ; Woerner, Amer. Law of Adm'n, pp. 733, 739, and cases cited.

Moreover, limitations cannot be set up against an executor's claim, whether the executor be sole or one of several. *State* v. *Reigart*, 1 Gill, 1; *Brown* v. *Stewart*, 4 Md. Ch., 368 ; *Spencer* v. *Spencer*, 4 Md. Ch., 456 ; *Semmes* v. *Young*, 10 Md., pp. 247-8. And we have a precise and authoritative

decision that the provision in question begins to operate only upon rejection and after *exhibition* of the claim in manner to authorize its payment.    *Coburn* v. *Harris*, 53 Md., 372.

*Mr. John M. Glover* for the defendants:

1. The evidence of Judge Hillyer is incompetent.    *Oliver* v. *Cameron*, McA. & M., 237.

2. The declarations of the defendant Augusta, made before letters, are not evidence against the estate.    *Plant* v. *McEwen*, 4 Conn., 544; *Thomson* v. *Driscoll*, 13 Ga., 253; *Garner* v. *Alexander*, 7 Gratt., 257; *Gilkey* v. *Hamilton*, 22 Mich., 285; *Morton* v. *Preston*, 18 Mich., 61; *O'Hara*, 4 Mich., 132; *Keefe* v. *Malone*, 3 McA., 236.

3. The complainants are not competent to prove the declarations of Mrs. Patten to them.    R. S. U. S., 858; *Montgomery* v. *Miller*, 3 Redf., 159; *Eslava* v. *Mazange*, 1 Woods, 625; *Bridges* v. *Armour*, 5 How., 94; *Noerr* v. *Brewer*, 1 McA.; *Pusey* v. *Wright*, 31 Pa. St., 387; *Society* v. *Society*, 14 N. H., 315; *Hobbs* v. *Russell*, 79 Ky., 61.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first question that is presented for determination is preliminary.    The evidence of Curtis J. Hillyer is objected to by defendants because it consists of transactions and communications between him and Mrs. Patten under the relation of attorney and client.    The witness said that he was an old friend of Mrs. Patten in California and Nevada, and that she frequently talked with him of her affairs in connection with her husband's estate, which were involved because she had never rendered any account to the court and had, in fact, never kept any regular account with her daughters and had no vouchers.    She showed him a letter from her attorney in Nevada advising some settlement with the court, and at her request he corresponded with this attorney for a short time. He advised her to prepare as complete and fair a statement as she could.    She did this, and witness went over the whole with her carefully.    They both agreed that it was about cor-

rect, and was a fair and liberal settlement. He advised her to explain it to her daughters, and have them to agree to it. She reported this as done, and he then drew up the instrument for the daughters to sign, and she informed him that they had signed it. The witness said that while he was a lawyer, he was not consulted by Mrs. Patten in that capacity at all, but simply as an old friend. It is evident also that the communications with Mrs. Patten were not intended to be confidential. We think the evidence is clearly competent. 1 Greenleaf on Ev., Sec. 240.

2. Another preliminary question arises upon the objections made to the evidence of the several complainants concerning certain transactions with and declarations by Mrs. Patten concerning this indebtedness to her children on account of their interests in their father's estate. The testimony of each was to the effect that Mrs. Patten, a few days before the marriage of the defendant Augusta, delivered to her $80,000 in United States bonds, which were worth $102,800 in cash at the time, in payment of her claim under the instrument reciting the indebtedness to her children as aforesaid, that the delivery was made with a declaration to that effect. One of the defendants testified in addition that a few days before her sister's marriage, she (witness) went with her mother to the Treasury to withdraw the bonds. The mother had had a calculation made of the requisite amount of the bonds, at their market value, to make the sum of about $100,600. The amount was something over $79,000, and witness advised her mother to make it an even $80,000, to which she acceded. These witnesses all testified to the transaction, by which Mrs. Patten, shortly after this, made a loan of $45,000 to John E. Beall, taking the note in the names of the four complainants, for the purpose, as they say, of making a payment to them on account of the same indebtedness. The objection is based on the proviso to the statute making parties competent witnesses, " that in actions by or against executors, administrators and guardians, in which judgment may be rendered for or against them,

neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." R. S. U. S., Sec. 858.

With respect to the $45,000 transaction and the declarations made concerning it, we think the objection well taken. These bear directly upon and support the issues made in the case upon the indebtedness of Mrs. Patten to them, her promise to pay the same, and also upon whether the bequest of the will was intended as an extinguishment of the indebtedness as against her estate. But in so far as the testimony relates to the transactions between Mrs. Patten and her daughter Augusta, and her declarations as to the object of the delivery of the bonds to her, we think the proviso does not apply. This is not subject matter of the suit in which the estate is interested. If the estate were interested, its interest would lie in making this proof, as it would have the effect of extinguishing her debt, which if unpaid would be a valid claim against it.  1 Wharton Ev., Sec. 468.

Without reviewing or attempting the analysis of the very many cases in which the effect of this proviso has been discussed in its application to the particular state of facts therein, we will content ourselves with quoting what seems a satisfactory statement of the true doctrine, in its application to the question as here presented: " The conflict must be really between the dead, whose mouth is closed, and the living, who is able to speak, in order to enable the statute to apply." 1 Wharton Ev., Sec. 470.

3. The evidence shows plainly enough that Mrs. Patten, in good faith, calculated the items of indebtedness to her children, on account of their father's estate, as accurately as she could, and had the instrument executed by them in order to effect a complete settlement. They were her children; she had not married again, and was possessed of a large and growing fortune of her own. She had long before made a will in which her whole estate was bequeathed to these

children, share and share alike, and they were unmarried and living with her. She was evidently a good business woman, and thought it best to manage the interests of her daughters while the foregoing conditions lasted. She did not, therefore, file it in the court in Nevada, but carefully preserved it. But we are not forced to indulge any presumption whatever with respect to her intention as to the effect of this settlement. The close calculation that she had made by a banker of the amount of bonds sufficient at the market rate to equal the principal sum due to her daughter Augusta, and the prompt delivery thereof to her on the eve of her marriage, together with her action in setting aside the Beall loan of $45,000 to the four others; and her declaration of purpose in so doing, furnished convincing evidence of her recognition of the binding effect of the settlement upon herself as well as upon them. Mr. Beall testified that when the loan was made to him, she directed that the notes be made payable to the four complainants, saying that the money was "advanced to them out of the fund belonging to them out of their father's estate." She said she wanted the interest payable quarterly, so that they might have some separate income as "pin money." She said it was part of the sum due them, and that she had made certain advances to Mrs. Glover. Beall inquired if she wanted the notes made payable to the five sisters, and Mrs. Patten replied, No; that Mrs. Glover had received her portion. This express recognition of the debt and the partial payments made upon it effectually dispose of the defense of limitations. *Cooper* v. *Olcott, ante* p. 123.

4. The Statute of Maryland of 1798, concerning estates, which provides that the claim of a creditor shall be barred unless suit is brought within nine months after the claim shall have been exhibited against an executor or administrator and rejected by him, is in force in this District, but has no application to the facts of this case. Ch. 101, Subch. 8, Sec. 18. This statute refers only to claims which could be *exhibited* against the executor. The common law allowed

an executor to retain money in payment of his claims against the estate in his hands. Sec. 19 of the foregoing act took this right away and provided not for exhibition to any one, but for the passage of such claims by the Orphans' Court, in which the claims of complainants are now pending. Moreover, this statute only operates after a claim has been duly exhibited and rejected, which is not the situation here. *Coburn* v. *Harris*, 53 Md., 352.

5. We cannot hold that the provision for complainants in the will of their mother is a satisfaction of the debt due them. This is not the case of a legacy to one who otherwise could take no interest; but of a general bequest, " share and share alike," to those who are the natural objects of the testatrix's bounty, and who would inherit the whole estate, in like manner, if no will had been made. Again, this will was made six years before the indebtedness was liquidated by the instrument of September, 1885, and contains no word of reference thereto. These considerations are sufficient to take the case out of the presumption which it is conceded the courts at an early period attached to the bequest of a legacy to a creditor where there was nothing on the face of the will to indicate a contrary intention. This rule of construction, though generally conceded to exist, has never met with favor. Mr. Pomeroy says of it: " This general rule being based upon artificial reasoning, has been distinctly condemned by able judges. It is not favored by courts of equity; on the contrary, they lean strongly against the presumption, will apply it only in cases which fall exactly within the rule, and will never enlarge its operation." 1 Pom. Eq. Jur., Sec. 527. He further says that they will take hold of very slight circumstances to remove a case from the operation of the rule, and adds, what is amply sustained by an examination of the reported cases, " In fact, the discussion of the general doctrine chiefly consists in the statement and description of those facts and circumstances which prevent its application." Id., Sec. 528.

In a case not unlike this, the Court of Appeals of Virginia said: " There is no doubt the rule still nominally exists; but

the tendency of the more recent decisions is to consider the bequest a bounty and not the discharge of an obligation. And the courts now lay hold of any circumstances, however trifling, for the purpose of repelling the presumption that the legacy was intended as a satisfaction of the debt." *Crouch* v. *Davis*, 23 Grattan, 62, 93.

In a well-considered case in Mississippi, it was also said: " Inasmuch as the presumption is arbitrary and often in conflict with the real motives and wishes of the testator, and seemingly harsh, courts have been prompt to seize upon every circumstance to counteract and overcome it." *Gilliam* v. *Brown*, 43 Miss., 641. See also, *Spencer* v. *Spencer*, 4 Md. Ch., 456; *Edelen* v. *Dent*, 2 Gill & J., 185; *Owings* v. *Owings*, 1 H. & G., 484; *Partridge* v. *Partridge*, 2 H. & J., 63; *Van Riper* v. *Van Riper*, 2 N. J. Eq., 1; *Heisler* v. *Sharp*, 44 Id., 167; *Eaton* v. *Benton*, 2 Hill, 576; *Horner* v. *McGaughy*, 62 Pa. St., 189; *Reynolds* v. *Robinson*, 82 N. Y., 103; 1 Redf. Wills (4th ed.), p. 540; Notes to *Chancey's Case*, 2 White & Tudor's L. C. Eq., p. 821 *et seq.*

The testimony in this case of the acknowledgment of the existence of the debts and the payments made to Mrs. Glover and the complainants on account thereof, long after the will had been made, if admissible for that purpose, would completely overturn any presumption of satisfaction, even if there were no intrinsic circumstances upon which the same might be done. The admissibility of evidence of the acts and declarations of a testator after the execution of ·the will, when there is no expression therein with respect to the matter, not to explain the will, but to rebut a presumption of law, is supported by very weighty authority. 1 Redf. Wills (4th ed.), 540; *Plunkett* v. *Lewis*, 3 Hare, 316; *Chancey's Case*, 2 White & Tudor's L. C. Eq., p. 781, and p. 808 *et seq.*

6. In order to determine the effect of the delivery of the bonds to Mrs. Glover, a few days before her marriage, it may be proper here to add, what might have been said in connection with the discussion of the question raised on the competency of the evidence in Mrs. Patten's declaration of

her purpose in so doing. If no evidence whatever had been given to show that delivery of the bonds was intended as a payment upon the debt instead of a gift to Mrs. Glover, the presumption would lie that it was so intended.

" It is settled by the uniform current of decision in England that when a father or other person *in loco parentis*, being a debtor to his child by any kind of ordinary indebtedness, makes an advancement to the child upon marriage, or upon any other occasion, that advancement is presumed to be a satisfaction, or a satisfaction *pro tanto*, of the debt. In order that the provision may operate as a satisfaction, it is not necessary that it should be made on the marriage of a child, or should be expressly in the nature of a portion." 1 Pom. Eq. Jur., Sec. 540; *Plunkett* v. *Lewis*, 3 Hare, 316.

7. Upon consideration of the whole case, we are of the opinion that the complainants are entitled to the relief prayed for, and the cause will be remanded to the Supreme Court of the District of Columbia, where a decree will be passed giving the same in accordance with this opinion.