- CLAWANS v. SHEETZ.

No. 6649.

United States Court of Appeals for the District of Columbia.

Decided July 26, 1937.

518

Levi H. David and Alan B. David, both of Washington, D. C., for appellant.

John Lewis Smith and Alfred L. Bennett, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the District Court of the United States for the District of Columbia sustaining the motion of the defendant (appellee) to strike plaintiff's (appellant's) declaration, plaintiff electing to stand thereon.

The suit (filed November 8, 1935) is in assumpsit, based on an alleged oral contract to recover the reasonable value of services alleged to have been performed by plaintiff for defendant's testator and for monies alleged to have been advanced by plaintiff for and in behalf of the decedent from June 27, 1918, to date of his death, November 11, 1932.

The court below, in sustaining the motion to strike, stated that it was conceded by plaintiff that she had not exhibited to defendant her claim legally authenticated, and expressed the view that the case was controlled by sections 192 and 193, Tit. 29, D. C.Code, 1929, respectively sections 357 and 330, D.C.Code 1901. For convenience we shall refer to them as sections 330 and 357. They read as follows:

"Section 330. Debts to be proved.—No executor or administrator shall discharge any claim against his decedent (otherwise than at his own risk) unless the same be first passed by the probate court, or unless the said claim shall be proved according to the following rules:

"Section 357. No claims to be noticed unless legally authenticated.—No executor or administrator shall be bound to discharge any claim against his decedent unless the same shall be exhibited to him, legally authenticated, or unless such claim shall have been passed by the probate court and entered by the register of wills upon his docket."

Plaintiff in her brief concedes that her claim was not passed by the probate court, nor exhibited legally authenticated.

The question presented by this appeal is whether a creditor may sue the executor on a claim which has neither been exhibited to him legally authenticated, nor passed by the probate court.

The case relates to the testamentary law of the District, particularly to subchapter 6 of chapter 5 of the 1901 Code of the District (31 Stat. 1189), as amended, entitled "Debts," a summary of the pertinent portions of which appears in the margin.[1]

[1] The first section of that subchapter is section 330 (D.C.Code 1929, T. 29, § 193) above quoted.

Then follow a number of sections (D. C.Code 1929, T. 29, §§ 192, 203–209, 211, 213–216, 220) specifying the rules or manner of proving and authenticating claims.

Section 341 provides: "It shall not be considered as the duty of an executor or administrator to avail himself of the act of limitations to bar what he sup-

Congress by the Act of February 27, 1801 (chapter 15, 2 Stat. 103), provided that "the laws of the state of Maryland, as they now exist, shall be and continue in force in that part of the said district [of Columbia], which was ceded by that state to the United States." Section 1. Since 1847 the District has consisted only of that part ceded by Maryland (Act of July 9, 1846, 9 Stat. 35; Phillips v. Payne, 92 U.S. 130, 133, 23 L.Ed. 649). The testamentary law of Maryland (Maryland Act

poses to be a just claim, but the same shall be left to his honesty and discretion."

Section 342 authorizes the executor or administrator to reject and at law dispute any claim exhibited to him legally authenticated.

Section 343 authorizes the executor or administrator to contest a claim passed by the probate court, and provides that the "claim shall derive no validity from the order" of the probate court passing it.

Section 344 provides that within 13 months (or such further time not exceeding 4 months as may be allowed by the probate court) from the date of his letters, an executor or administrator shall "discharge all such claims known to him or pay each claimant his just proportion of the money then in his hands (retaining as herein directed);"

Section 346, relating to retaining for claims, provides that an executor or administrator shall pay all just claims against his decedent exhibited to him, or a just proportionable part thereof, according to the assets; "and if any claim be known to him (although the same be not exhibited) he shall retain the same, or a just proportionable part, for the benefit of the creditor: *Provided*, That if any executor or administrator shall have actual knowledge of a claim which has not been exhibited or passed he shall give notice in writing to the creditor, requiring the claim to be either exhibited or passed, as herein provided, within thirty days if such ·creditor be a resident, * * * and after the expiration of such period, and after the expiration of the period for distribution provided by section three hundred and forty-four hereof, the executor or administrator shall not be required to retain any part of the estate for the benefit of such creditor, unless in the meantime such claim shall have been so exhibited or passed."

Section 347 provides that if an action "be commenced against an executor or administrator for the recovery of a larger debt or damages than he shall think due, so that the same can not be ascertained before verdict, the executor or administrator shall be allowed to retain such sum to meet the said debt or damages as the probate court shall allow."

Section 348, *known as the special statute of limitations*, reads as follows: "If a claim be exhibited against an executor or administrator which he shall think it his duty to dispute or reject, he may retain in his hands assets proportioned to the amount of the claim, which assets shall be liable to other claims, or to be delivered up or distributed in case the claim be not established; and if on any claims exhibited and disputed as aforesaid the creditor or claimant shall not, within nine months after such dispute or rejection, commence a suit for recovery the creditor shall be forever barred."

Section 349. "Claims made after distribution.—In case all the assets have been paid away, delivered, or distributed as herein directed, and a claim shall afterwards be exhibited of which the executor or administrator hath not knowledge or notice by the exhibition of the claim legally authenticated, as herein required, he shall not be answerable for the same; and if he be sued for any claim and shall make it appear to the court in which suit is brought that he hath so paid away, delivered, or distributed, and the plaintiff can not prove that· the defendant had notice as aforesaid before such payment, delivery, or distribution, the court shall not proceed to give judgment (although the amount of the claim against the deceased may be ascertained) until the plaintiff shall be able to show further assets coming into the defendant's hands, but if the plaintiff shall prove notice, as aforesaid, of the said claim against the· defendant, judgment may be immediately given for such sum as the plaintiff ought to have received at the dividend, and fieri facias may issue and have effect, and further judgment may be given on coming in of further assets."

Section 350 provides that "no executor or administrator who shall, after the lapse of one year after the date of his letters, have paid away assets to the discharge of just claims shall be answerable for any claim of which he had no knowledge or notice by an exhibition of the claim legally authenticated," provided that, at least 6 months before distribution, he shall have given legal notice by publication to claimants. ·

Section 354 provides that the register of wills shall enter in a suitable book all claims passed by the probate court, "and the entry of a claim upon such docket shall be taken as notice to the executor

of 1798, ch. 101, 2 Kilty's Laws) became operative in that state on June 1, 1799, and was in force on February 27, 1801 (section 5, ch. 101, Maryland Act of 1798). This court has declared that "the Maryland Act of 1798 superseded the common law in that State, and became the law of this District," and that the decisions of the courts of that state have a bearing upon the construction of the District Code, "inasmuch as our [testamentary] law was taken largely from that State." Berry & Whitmore Co. v. Dante (1915) 43 App.D.C. 110. See, also, Tuohy v. Hanlon (1901) 18 App.D.C. 225; Robeson v. Niles (1889) 7 Mackey (18 D.C.) 182, 193. The genesis of the 1901 D.C.Code is given in the historical statement following the preface to the 1929 D.C.Code. Therein is quoted a statement made in 1898 by Justice Walter S. Cox of the Supreme Court of the District to the effect that the Bar Association of the District had joined in a request made in 1895 that he "undertake the preparation of a code *based upon the existing code of Maryland*," namely, 1888 Md.Code. The results of the work of Judge Cox and a Bar Association Committee were approved by the Supreme Court of the District. The proposed code was introduced in Congress in 1900 and became law on March 3, 1901 (1929 Code, pp. XII, XIII). A comparison of the testamentary law in the Maryland Code of 1888 with the 1901 District Code clearly shows that the testamentary provisions of our Code were largely based thereon and in many instances are almost identical; in addition, most of our Code provisions are substantially similar to provisions of the Maryland Act of 1798.

Section 327 of the 1901 Code, as amended (D.C.Code 1929, T. 29, § 251), relating to suits by and against executors, provides that executors and administrators shall "be liable to be sued in the supreme court of said District [2] in any action at law or in equity, except as aforesaid [the exceptions being actions for injuries to the person or to the reputation], which might have been maintained against the deceased."

■ The general statute of limitations in this District is three years. Section 1265, 1901 Code (D.C.Code 1929, T. 24, § 341). Unless governed by special provisions in particular cases, the general statute is controlling.

The special statute of limitations in our testamentary law is section 348 (D.C.1929, T. 29, § 208), which provides that "if on any claims exhibited and disputed as aforesaid the creditor or claimant shall not, within nine months after such dispute or rejection, commence a suit for recovery the creditor shall be forever barred."

■ Defendant contends that "this suit could not be filed until the claim was exhibited to the defendant or proved, *and duly rejected by him*." (Italics ours.) If such were the law, the case would be governed by the special statute, which provides that *if a claim is disputed* suit must be commenced "within nine months after such dispute or rejection." Being an exceptional abbreviation of the general statute, the special statute should be strictly construed. Robeson v. Niles, 7 Mackey (18 D.C.) 182. "The rejection or refusal to pay a claim not authenticated, is not such a refusal or rejection as is contemplated by the Code, and imposes no obligation on the creditor to sue thereon within nine months. It stands as if it never had been exhibited." Coburn v. Harris, 53 Md. 367; Bradford v. Street, 84 Md. 273, 35 A. 886; Robeson v. Niles, 7 Mackey (18 D.C.) 182; Patten v. Glover, 1 App.D.C. 466; Washington Loan & Trust Co. v. Darling, 21 App.D.C. 132. In the latter case this court in referring to the special statute in the Maryland Act of 1798, which is similar to the special statute in our Code, said: "As the demand made upon the executor was not authenticated as re-

or administrator of its existence." But section 355 provides that a claim "thus entered" affords no evidence as to its correctness if it be controverted by the executor or administrator in a suit thereon.

Section 357, relating to claims to be noticed, appears above in the body of this opinion.

Section 358 authorizes an executor to appoint a meeting of creditors.

Section 359 provides that when it appears that the claims against the deceased which have been notified to the executor have been discharged, he shall deliver up and distribute the surplus of the personal estate not disposed of by will, in the manner provided by the Code; that after such delivery he shall not be liable for any debts afterwards notified to him, provided he has published notice to creditors, unless assets shall afterwards come into his hands which shall be answerable for such debts.

[2] Now District Court of the United States for the District of Columbia.

quired by law, its rejection did not have the effect to bring any part of it under the operation of the special statute of limitation provided for such cases." In the present case plaintiff did not exhibit her claim to the executor legally authenticated, nor was it passed by the probate court. The special statute in our view is inapplicable.

We now come to section 330 (D.C. Code 1929, T. 29, § 193), which provides that no executor or administrator shall discharge any claim against his decedent (otherwise than at his own risk) unless the same be first passed by the probate court, or unless properly proved. This section was designed to relieve the executor or administrator from liability if he should elect to pay claims passed by the probate court, or properly proved. As we said in Miniggio v. Hutchins, 43 App.D.C. 117, "under section 330 of the Code * * * the approval of a claim properly proved relieves the executor or administrator from liability if he elects to pay it; but, by section 342 [D.C. Code 1929, T. 29, § 206] he may contest it at law, and, in such action, the approval of the probate court by section 343 [section 207] is deprived of even evidentiary effect." In our view there is nothing in section 330 which prevents suit on a claim which has neither been exhibited to the executor legally authenticated nor passed by the probate court.

The court below and the defendant on this appeal placed reliance upon section 357 of the 1901 Code (D.C.Code 1929, T. 29, § 192), which we again quote:

"*No claims to be noticed unless legally authenticated.*—No executor or administrator shall be bound to discharge any claim against his decedent unless the same shall be exhibited to him, legally authenticated, or unless such claim shall have been passed by the probate court and entered by the register of wills upon his docket."

It will be observed that the language of the section heading, which is part of the enactment is "No claims to be noticed"; but that the language of the body of the section provides that no executor "shall be bound to discharge any claim," etc. Because of this difference in language, the meaning of the section is to be deduced from the language of its heading as well as from the language of the body thereof; in other words, the phrase "to be noticed" and the words "to discharge" must be read together to determine the meaning of the statute.

The corresponding section of the Maryland Code is contained in the first Code of that state adopted in 1860 (section 117, art. 93), and appears unchanged as section 116, art. 93, in the 1888 Code, as well as unchanged in subsequent Codes of that State.* It provides as follows: "No administrator shall be bound to take notice of any claim against his decedent unless the same shall be exhibited to such administrator legally authenticated; or unless such claim shall have been passed by the orphans' court and entered by the register [of wills] upon his docket, or unless a suit shall be pending against such administrator for such claim."

The history of that section is as follows: In 1823 the Maryland Act of 1798 was amended[3] to provide that as to claims not presented to the executor legally authenticated, after publication of notice to creditors, "such claimant or claimants shall be in the same situation to all intents and purposes with regard to his, her or their claims, as those whose claims are unknown to the executor or administrator." In other words, the executor was not bound to notice a claim unless exhibited to him legally authenticated.

In 1848 the Court of Appeals of Maryland held that this amendment was not designed to apply to cases "where the notice to the executor or administrator has been

---

* Section 121, art. 93, 1924 Md. Code.

3 "That in all cases where a claim or claims, against a deceased person's estate, shall be known to the executor or administrator of such estate, and such claimant or claimants shall delay, neglect or refuse to bring in his, her or their claim or claims, legally authenticated, after notice given as directed in the thirteenth section of the eighth chapter of the Act to which this is an additional supplement [similar to section 350, D.C.Code,

1901, D.C.Code 1929, T. 29, § 216], and within the time limited in such notice, such claimant or claimants shall be in the same situation to all intents and purposes with regard to his, her or their claims, as those whose claims are unknown to the executor or administrator, any thing in the Act [act of 1798 to which this is an additional supplement to the contrary notwithstanding." Section 2, ch. 131, Acts 1823.

given through the medium of a lis pendens or been in due time followed by it." Steuart v. Carr, 6 Gill, 430, 444.[4]

In 1854 the Act of 1798 was again amended[5] to provide that the entry on the docket of the register of wills of a claim passed by the orphans' court "shall be taken and considered as notice to the executor or administrator of its existence."

This was the state of the Maryland law relative to notice to be taken by an executor of claims against an estate in 1860 when the first Code of that state was adopted. That Code (section 117, art. 93) incorporated the provisions of the above two amendatory acts of 1823 and 1854, that is, that the executor is not bound to notice (1) claims not exhibited to him legally authenticated, nor (2) claims not passed by the orphans' court and entered on the docket of the register of wills. In addition, that code section contained the further proviso (apparently based on the court's ruling in Steuart v. Carr) that the executor also is not bound to take notice "unless a suit shall be pending against" him for such a claim.

█ In the light of the foregoing, it is our view that the meaning of section 357 of our Code (D.C.Code 1929, T. 29, § 192) is no different from that of the corresponding section of the Maryland Code; that is, that it is intended to charge the executor with notice of claims only in case they shall be exhibited to him, legally authenticated, or shall have been passed by the probate court

and entered by the register of wills upon his docket.

Although our Code section omitted the proviso contained in the Maryland Code that he shall not be bound to take notice of a claim "unless a suit shall be pending against such administrator for such a claim," we think it would be illogical to hold that such omission was intended to excuse the executor or administrator from noticing a claim upon which suit is pending against him. In the view we take of section 357 it cannot be said that it bars a suit upon a claim which has neither been exhibited to the executor legally authenticated, nor passed by the probate court.

To aid in reaching our determination in this case, we review decisions of the courts of Maryland and the District bearing thereon.

In Zollickoffer, Ex'r, v. Seth, Adm'r (1876) 44 Md. 359, the court, speaking of the testamentary law of Maryland, said: "It is no where declared or intimated that there should be no remedy for a creditor who may have failed to authenticate and notify his claim to the executor, before final administration; or that, if the creditor's claim be not ascertained or provable before such final settlement and distribution, he should be without remedy, notwithstanding his debtor's assets may be shewn to be abundant, simply because the executor or administrator may have delivered them over to legatees or distributees." The court considered section 108 of article 93 of the Maryland Code of 1860 (similar to our special statute of

---

[4] The court observed: "Numerous cases must arise and have arisen where the authentication of claims in the particular mode prescribed by the acts of Assembly was impracticable, and for the recovery of which, resort to a court of justice was the only alternative left to the creditor for the recovery of his claim. If the act of 1823, is to receive the literal construction now contended for, it would be in the power of the executor or administrator, on almost every estate to prevent any judgment or decree being rendered against them, by making a final distribution of the estate pending the litigation. And a creditor might be, in like manner, defeated, if pending a suit in Chancery against the executor or administrator in whose exclusive knowledge rested the existence and justice of the claim, a final distribution of the deceased estate were made, although at the time of the distribution, the executor or administrator well knew that nothing was wanting but

the filing his own answer in Chancery, (which in a few days he must be compelled to file,) conclusively to establish the creditor's claim. A construction fraught with such inconsistency and injustice is never to be imposed upon an act of the legislature, if it be susceptible of any other just and rational interpretation."

[5] "That in all cases hereafter, when letters testamentary or of administration, shall be granted by the Orphans' Courts * * * it shall be the duty of the Register of Wills of the respective county or city, to enter in a suitable book to be provided by him for that purpose all claims against such testator or intestate as they are regularly passed, * * * and the entry of a claim upon such docket, shall be taken and considered as notice to the executor or administrator of its existence." Section 1, ch. 86, Maryland Acts 1854.

limitations) and said: "By this provision, not only is the executor exonerated, but he is required to pay out or distribute the money retained, and the creditor is forever barred all right of recovery against the assets of the estate, no matter in whose hands they are found. No such bar or preclusion is provided in terms with reference to any claim that has not been exhibited, or which, in the nature of things, could not have been exhibited, before final administration; and hence it may well be concluded that no such bar or preclusion was ever intended with respect to such claims."

Coburn v. Harris (1880) 53 Md. 367, was an action in assumpsit against the administrator to recover an amount due for stone sold and delivered to his intestate. The claim "had not been sworn to by the creditor and his clerk, nor had it been passed by the orphans' court when it was presented to the administrators, and disputed by them." In affirming the judgment for the plaintiff the court stated that section 108, art. 93, Md.Code, 1860, was a codification of the Act of 1798, ch. 101, subch. 8, § 18 (similar to our special statute), and held that under that section a claim *is not barred,* "'unless the claim after being authenticated by the oath of the plaintiff, or after being passed by the orphans' court, was presented to the administrators for payment by the plaintiff, or by some one by him authorized so to present it, and was disputed or rejected by said administrators, and the plaintiff failed to bring suit to recover on said claim within nine months after such dispute or rejection.' * * * The rejection or refusal to pay a claim not authenticated, is not such a refusal or rejection as is contemplated by the Code, and imposes no obligation on the creditor to sue thereon within nine months. It stands as if it never had been exhibited."

In Schnepfe v. Schnepfe, 124 Md. 330, 92 A. 891, 893, Ann.Cas.1916D, 988, plaintiff sued the executor on an antenuptial contract with the decedent and obtained a decree. Appellant executor contended that because plaintiff's claim had not been passed by the orphans' court or proven as provided for in art. 93 of the Maryland Code, she was precluded from maintaining her bill. In affirming the decree and rejecting this contention the court stated: "If a creditor knows that his claim will be contested, or if he cannot procure the proof that is necessary in order to comply with the provisions of article 93, there can be no reason why he should not sue, in law or equity, as the nature of the claim may require or authorize." The court observed that the following language from Steuart v. Carr, 6 Gill (Md.) 430, was applicable: "Numerous cases must arise and have arisen where the authentication of claims in the particular mode prescribed by the acts of assembly was impracticable, and for the recovery of which resort to a court of justice was the only alternative left to the creditor for the recovery of his claim." The court further said: "The position taken in this case by the executor shows that it would have been useless for the appellee to have proven his claim in the orphans' court, even if it be conceded that it could have been validly determined by that court."

In Robeson v. Niles (1889) 7 Mackey (18 D.C.) 182, the plaintiffs, administrators of deceased Aulick's estate, sued in equity the executors of decedent Dykeman for $10,000 for services rendered by Aulick as *agent and attorney.* The claim in the form set out in the bill was not presented to the executors until the bill was filed; and was never proved by Aulick's administrators "as required by the testamentary acts, nor filed in the orphans' court at any time." The court ruled that because the claim in suit had not been presented to and rejected by the executors nine months before the filing of the bill, the special plea of limitations had no application. In other words, it was held that a suit could be maintained on a claim which had not been presented to the executors until the bill was filed, and which had never been proved "as required by the testamentary acts, nor filed in the Orphans' Court at any time."

In 1893 this court held that although claims of four executrices against the estate had been filed and were pending in the orphans' court (in other words, not passed by the orphans' court), suit thereon could be maintained against the other executrix of their mother's estate. Patten v. Glover, 1 App.D.C. 466.

In Washington Loan & Trust Co. v. Darling (1903) 21 App.D.C. 132, the executor of the estate of Mrs. Spranger passed his final account and was discharged on May 20, 1898, after transferring the estate remaining in his hands to the Washington Loan & Trust Co., to which Mrs. Spranger devised her estate in trust. Thereafter, in 1900, the trustee was sued in equity by

decedent's mother-in-law for an annuity based on a contract with Mrs. Spranger and covering services rendered by the complainant as decedent's attorney in fact. The complainant had presented to the executor before he was discharged an unauthenticated claim for monthly installments due on the annuity, which claim was rejected. This court held that "as the demand made upon the executor was not authenticated as required by law, its rejection did not have the effect to bring any part of it under the operation of the special statute of limitation provided for such cases," namely, Act of Maryland of 1798, ch. 101, subch. 8, § 18, which is similar to the special statute in our Code. The court further held that the mere fact that the complainant failed to prosecute a suit, as she might have done, against the executor before his settlement and discharge did not deprive her of the right to proceed in equity against the estate in the hands of the trustee.

With the rulings in the above cases in mind, we will now consider section 349 of our Code (D.C.Code 1929, T. 29, § 215), which in our view adds cogency to the view that suit may be brought on a claim not exhibited to the executor legally authenticated, or as to which he has not legal notice. That section provides that if distribution has been made and a claim "afterwards be exhibited of which the executor or administrator hath not knowledge or notice by the exhibition of the claim legally authenticated, as herein required, he shall not be answerable for the same." In other words, an executor is exonerated as to any claims as to which he had not legal notice prior to distribution.

The section then provides that *if the executor be sued for any claim* and he shall show that he has made distribution, *"and the plaintiff can not prove that the defendant [executor or administrator] had notice as aforesaid"* before such distribution, "the court shall not proceed to give judgment" *until* the plaintiff shall be able to show further assets coming into the defendant's hands. The section further provides that "if the plaintiff shall prove notice, as aforesaid, of the said claim against the defendant, judgment may be immediately given for such sum as the plaintiff ought to have received at the dividend."

We find nothing in our testamentary law which in terms bars suit on a claim which was not exhibited to the executor legally

authenticated, or passed by the probate court. By section 348 (D.C.Code 1929, T. 29, § 208) a claim so exhibited and disputed is specifically barred, unless suit for its recovery is commenced within nine months after its rejection. Bradford v. Street, 84 Md. 273, 35 A. 886; Zollickoffer, Ex'r, v. Seth, 44 Md. 359. It is significant to note that section 346 (D.C.Code 1929, T. 29, § 213) authorizes the executor or administrator to retain assets "if any claim be known to him (although the same be not exhibited)"; requires him to give the claimant notice to exhibit his claim; exempts the executor from retaining assets if the claim is not exhibited within the time specified; yet it does not provide that failure to exhibit in response to the notice will bar the claim. Section 347 (D.C.Code 1929, T. 29, § 214) contemplates suit against an executor or administrator and authorizes the probate court to allow him to retain to meet the verdict.

In view of the language of our testamentary law, its history, and in the light of the foregoing decisions of the courts of Maryland and the District, we are of the opinion that the claim of the plaintiff in the present case is not barred for failure to exhibit it to the executor legally authenticated or to have it passed by the probate court.

The judgment is reversed for further proceedings not inconsistent with this opinion.

Reversed.