George **HYMAN**, Petitioner,

v.

**DISTRICT OF COLUMBIA**, Respondent.
No. 13549.

United States Court of Appeals
District of Columbia Circuit.

Argued May 8, 1957.

Decided July 15, 1957.

Petition for Rehearing In Banc Denied
Sept. 16, 1957.

Mr. Milton I. Baldinger, Washington, D. C., with whom Mr. S. David Rubenstein, Washington, D. C., was on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Leo J. Ehrig, Jr., Asst. Corp. Counsel, were on the brief, for respondent.

Before WILBUR K. MILLER, FAHY and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

We have before us for the first time this question concerning local inheritance taxation: when realty is devised "subject to whatever claim or lien" the devisee may have thereon, should the tax on the transfer be computed on the gross value of the realty, as the District of Columbia Tax Court held, or on the net value after the devisee's claim thereon has been deducted, as the petitioner contends?

We glean the following facts and figures from the findings of the Tax Court. In 1928 the petitioner, George Hyman, purchased certain real estate in the District of Columbia and arranged for his sister, Mrs. Leah Rome, a resident of Maryland, to have an interest therein which was to be, and in fact was, paid for out of her share of the rents. In 1938 Mrs. Rome's husband died. She was then in poor health and progressively grew worse until her death in 1954. During those years Hyman paid the sum of $153,033.75 for his sister's care and maintenance and the further sum of $26,-499.44 for income taxes owed by her—a total of $179,533.19. In the same period Mrs. Rome's share of the rents from the District realty amounted to $99,696.28, which Hyman credited to her account. Thus at death Mrs. Rome owed her brother the sum of $79,836.91.

The decedent's will was probated in Maryland and an exemplified copy was lodged with the District's Register of Wills to serve as a muniment of title. There was no ancillary proceeding in this jurisdiction. Hyman did not file a proof of his claim in the probate proceeding in Maryland, nor did he file one with the Register of Wills or any other District official or agency. The pertinent language of the will is as follows:

"The one-fifth interest which I now own in the real estate and other assets which formerly belonged to George Hyman Properties, Inc., was acquired by me from or through my brother, George Hyman. I hereby give, bequeath, and devise, absolutely, my entire interest in the said

real estate and other assets unto my said brother, George Hyman, his heirs, personal representatives, and assigns * * * and * * * a one-fifth interest in bonds of the Washington Auditorium, of the face amount of $67,000; the said real estate and bonds are subject to whatever claim or lien the said George Hyman may have thereon."

The District of Columbia Assessor valued Mrs. Rome's undivided interest in the District real estate at $193,000 and computed Hyman's inheritance tax on that sum without any deduction for his debt claim to which the devise was subject.[1] Hyman paid the tax computed by the Assessor and demanded by the District and petitioned the Tax Court for redetermination and refund.

In his petition to that tribunal, Hyman alleged that, as the devise of the District realty and the bequest of the bonds having a Maryland situs were both subject to his sister's debt to him,[2] the taxable value of the realty should have been reduced in the same proportion that the value of the realty bore to the total value of the devise and the bequest. On that basis, he contended that the gross value of the devised realty should have been reduced by the sum of $8,524.09 in order to determine the taxable value. Hyman petitions for review of the adverse decision of the Tax Court.

 While a tax on inheritance or succession is not a property tax but a duty or excise laid on the privilege of taking property by descent, it is measured nevertheless by the market value of the transferred property at the time the owner died.[3] It is true that an unqualified devise transfers the legal title, but it does not follow that the gross value of the realty so transferred is the yardstick by which the tax should be measured. If it is encumbered at the date of death, the then market value of the property transferred is the gross value less the encumbrance. Any other construction of the statute could lead to absurd results which we cannot believe Congress intended. For example, to say it was legislatively intended that a devisee of realty worth $10,000 subject to a mortgage of $9,500 must pay an inheritance tax on $10,000 strains credulity; for, if the devisee were a brother of the testator, he would be required to pay a tax of $240 although he received property worth on the market and worth to him only $500. Examples might be given where, on that basis, the tax would devour the whole devise.

 It therefore seems to us that the only sensible view of the Congressional intention is that it was to require the tax to be computed on the value of what the beneficiary actually receives. That being true, decision here as to the value of the interest transferred depends on the construction of Mrs. Rome's will as to what estate the petitioner took thereunder; and that in turn depends on the intention of the testatrix, as ascertained from the language of the will interpreted according to established canons of construction, unless in the circumstances and conditions at the time of its execution it should clearly appear that the testatrix did not intend the testamentary words to be construed in their usual connotation. In this case, the attendant circumstances and conditions indicate that Mrs. Rome intended the words "subject to," et cetera, to have the qualifying effect which the law assigns to such testamentary language, as will appear. The crucial language in the will is simple and exact: "subject to whatever claim or lien the said George Hyman may have thereon."

 That, at her death, Mrs. Rome owed Hyman the sum of $79,836.91 is established by the finding of the Tax Court. Her will provides that if her brother had

1. Since the situs of the Auditorium bonds, valued at $10,500, was in Maryland, the Assessor took no account of them.

2. Which he fixed at only $72,054.77 instead of the larger figure mentioned above which was found by the Tax Court.

3. Fisher v. District of Columbia, 1947, 82 U.S.App.D.C. 371, 164 F.2d 707.

a claim or lien on her realty interest, the devise of the interest to him should be subject to such claim or lien. The existence and amount of the debt, having been found by the Tax Court, are not in doubt or dispute, so the first question is whether Hyman had a "claim or lien" on the devised interest.

■ We must construe these testamentary words in the light of the circumstances which existed when Mrs. Rome used them. She knew she owed her brother something but she probably did not know how much, which explains the word "whatever" in the expression "whatever claim or lien" he may have thereon. It is logical, we think, to suppose she thought he had, or at least that she wanted him to have, a claim or lien on the realty interest she had acquired through his good offices, to secure the large advances he made for her benefit. But she restricted his "claim or lien" to the property he had enabled her to own; she did not want him to look to the remainder of her estate for reimbursement. Moreover, she may have been advised of the provisions of § 18–501, D.C.Code 1951, which protect a District creditor with respect to his foreign debtor's District realty.[4] We think it reasonable to conclude that the considerations just mentioned moved Mrs. Rome to bequeath and devise to her brother the property she had acquired through him "subject to whatever claim or lien" he may have thereon.

But whether so or not, the testamentary words "subject to" which she used had the legal effect of transferring the realty interest burdened by whatever debt she owed him, thus reducing the devised estate accordingly and correspondingly shortening the yardstick by which the tax is measured.

■ Such "subject to" provisions in deeds and wills have a definite legal meaning. They qualify or limit the estate conveyed or devised. Brown v. South Boston Sav. Bank, 1889, 148 Mass. 300, 19 N.E. 382, 384; Consolidated Coal Co. v. Peers, 1896, 166 Ill. 361, 46 N.E. 1105, 1109, 38 L.R.A. 624; Cox v. Butts, 1915, 48 Okl. 147, 149 P. 1090–1091; Harley v. Magnolia Petroleum Co., 1941, 378 Ill. 19, 37 N.E.2d 760, 766, 137 A.L.R. 900. They show that the grantor or testator did not intend to grant an absolute title. Percival v. Williams, 1909, 82 Vt. 531, 74 A. 321, 327. A devise of land "subject to" a certain mortgage is not a devise subject to a charge in favor of testator's estate, but a gift of the property subject to the encumbrance thereon. Langstroth v. Golding, 1886, 41 N.J.Eq. 49, 12 Vroom 49, 3 A. 151, 154. It has been held that the words "subject to" mean that the conveyance is restricted and equivalent to no conveyance at all as far as the previous encumbrance is concerned. Atlanta Trust Co. v. Federal Land Bank, 1942, 195 Ga. 142, 23 S.E.2d 430, 433.

None of the cases from other jurisdictions cited by the Tax Court and relied on by the respondent was concerned with a testamentary "subject to" provision. And our decision in Slyder v. District of Columbia, 1951, 88 U.S.App.D.C. 170, 187 F.2d 217, did not involve a situation such as we have here, as the will in that case was made pursuant to contract and there was no "subject to" clause to be considered.

In the course of its opinion the Tax Court said:

"* * * [N]otwithstanding silence in the inheritance tax law as to the allowance of deduction for debts of a decedent, such deduction

---

4. Section 18–501, D.C.Code 1951, is as follows:

"On the death of any person not domiciled in the District of Columbia at the time of his death so much of his real and personal estate in the District of Columbia as may be necessary for the payment and discharge of just claims against him of creditors and persons

domiciled in the District of Columbia shall also be the subject of administration under authority and direction of the probate court, irrespective of the personal estate of such decedent at his place of domicile or elsewhere: *Provided*, The prosecution of such claims is begun in said court within six months after the death of such decedent."

generally must be allowed. An inheritance tax is measured by what the beneficiary receives. If A bequests his entire estate worth grossly $10,000 to B, but owes $5,000 to C, which must be paid, then B would only receive $5,000, which would be the measure of the tax. * * *[5]

But the opinion went on to say:

"It does not necessarily follow, however, that where, as here, the debt is owed to the devisee or legatee and has not been proved by the creditor nor paid by the decedent's estate, it can be deducted from the value of the property devised or bequeathed. * * *"

and finally the court rejected Hyman's theory, saying

"* * * [He] should have filed his debt claim in the probate proceedings. If he had, in all likelihood the real estate of the decedent in the District of Columbia would have been answerable for the debt, since the petitioner was a domiciliary of the District and could have looked to such property for the payment of his claim; and if in settlement he had been given the property or a part thereof, as was done for the creditor in Bente v. Bugbee, supra [103 N.J.L. 608, 137 A. 552, 58 A.L. R. 1137], no tax would be legally assessable against such transfer. The petitioner did not file his claim in the probate proceedings, but accepted the devise in satisfaction thereof. His tax liability must be determined accordingly. * * *"

Thus the Tax Court recognized that an inheritance tax is measured by what the beneficiary receives; that when a devise is burdened by the testator's debt due to another, the devisee receives only the net value which becomes the measure of the tax. But the court gave decisive effect to the fact that here the debt which burdened the devise was due to the dev-isee instead of another, and the further fact that the devisee did not file his claim in the probate proceeding but "accepted the devise in satisfaction thereof,"—which is another way of saying he accepted the devise subject to the burden the testatrix placed upon it. The holding seems to have been that the debt would have been deductible (a) if it had been owed to another, and (b) if Hyman's claim had been proved in the probate proceeding and had been there allowed, not as a general claim, but as one restricted to the devised interest. We think the Tax Court erred in both respects.

(a) If the devise had been subject to a mortgage in favor of another, we suppose none would deny that the inheritance tax should be computed on the net devise. We are unable to see why there should be a difference if the mortgage were in favor of the devisee: the value of his devise would still be the remaining net. The Tax Court went further and said that, if the devise had been subject, not to a mortgage, but to a simple debt "which must be paid," the tax would have been computed after the deduction of the debt; if so—and we agree that it is so—there is no reason apparent to us why it should not be so computed when the debt is due the devisee. The debt already belonged to Hyman. He did not receive it from his sister when she devised the property to him subject to his debt. He received as an inheritance only the net value of her realty interest; it was only that which was transferred to him as such by the will.

(b) It was of course necessary for Hyman somewhere to prove a valid, subsisting and enforcible claim before it could be allowed as a deduction for inheritance tax purposes. Various doors to such proof are open. For example, the District of Columbia Assessor has the power to hold hearings and to take testimony for the purpose of the administration of the inheritance tax laws.[6] Ap-

---

5. In support was cited Judge Koenigsberger's holding to that effect in Frear v. District of Columbia, 72 W.L.R. 1109 (1944).

6. Section 47–1618, D.C.Code 1951.

parently the Assessor did not take proof concerning Hyman's claim against his sister, possibly because he rejected the theory that any such claim could be deducted. But in the *de novo* proceeding before the Tax Court, another avenue of proof, the claim was sufficiently established by evidence to produce an express finding by that court that "At the time of her death the decedent was indebted to the petitioner for monies advanced for the above-mentioned purposes in the sum of $79,836.91."

Thus Hyman's claim was just as effectively established for inheritance tax purposes as it would have been had it been proved in the probate proceeding and allowed by the probate court. The validity of his claim for those purposes was not impaired by his failure to file for its allowance in the probate proceeding. Hawley v. Hawley, 1940, 72 App. D.C. 357, 114 F.2d 505; Clawans v. Sheetz, 1937, 67 App.D.C. 366, 92 F.2d 517. Indeed, Hyman may have been well advised in not proving his claim in the probate proceeding, for doing so might have been construed as an election to waive the devise and pursue the collection of his claim as a general obligation of the estate.

Limiting our ruling to the language of the will here involved and to the facts and circumstances shown to exist, we hold that Hyman is clearly entitled to the relief he sought. The decision under review will be reversed, and the case will be remanded to the Tax Court with instructions to redetermine the tax on the value of the property interest diminished by the amount of the debt.

It is so ordered.

FAHY, Circuit Judge (dissenting).

I would affirm the decision of the Tax Court. While the situation is an ambiguous one I think the property at its full value passed to the taxpayer by the will.